I'd like to reserve three minutes for rebuttal, if I may. Very, very well. Good morning. My name is Michael Stewart from Murray & Murray in Sandusky, and I represent Kenneth and Martha Cole, who own a farm about a quarter mile off of a secondary road in Trumbull County, Ohio. In 2006, before the general interest in shale oil gas took off, they were visited by a single representative of one of the appellees here in North Coast Energy. It's not accompanied by a notary, but during the visit, the Coles signed an oil and gas lease, which is attached to the state court complaint and is included in the record. Although this case does not involve a claim that the leases were procured by fraud in the legal sense, there are two important considerations that underlie this litigation and would be developed in the district court upon remand. First, the terms of the lease are extremely unfavorable to the Coles and would not be entered into by a representative or sophisticated party today. Well, I mean, we've had a bunch of these cases where property owners in Ohio are trying to get out of these leases. So, you know, one gathers the market has changed since, you know, maybe the mid-2000s or whenever these got signed, and I mean, that's why you have contracts. You can't just get out of it because the price, you know, the going rate for royalties or whatever has gone up. Well, with respect to these instruments, there are two lines of case law in Ohio that have been kind of fleshed out in the briefs. One is Delfino, which deals with leases. There's a second called Citizens National, which deals with deeds and mortgages. I would suggest that, you know, that consideration that you just raised with respect to, you know, trying to get out of the leases, you know, is equally apparent in, say, an expensive commercial lease, a shopping center or something like that, you know, and that there are, you know, policy considerations that are balanced. I mean, on the other side. My point was that you're stuck with a deal. When you sign a contract, that's the whole point of the contract is to hold you to it, even if it later becomes less advantageous than you thought. And I would respond to that by saying that that same consideration would apply in the context of a commercial lease, and it's very clear under Ohio law that that would be voidable for its entire duration under the Delfino line of case law. Not for that reason, though. It would be voidable due to the defective notarization, which is what we have here. So to the extent that there's a contractual argument, it would be equally applicable in each instance. Okay. I understand. Okay. What's the purpose in Ohio of having the notarization? I think that there are a number. I think the first is that it ensures the solemnity of executing these. It ensures a regularity in the execution of these. As the Delfino Court points out, it has some effect on deterring fraud or a hasty decision. The main purpose is for the person to swear to the notary that he is the person who is signing the document. Isn't that the main purpose? That's the purpose of the acknowledgment, but the purpose of requiring it in a certain – I mean, we're looking at a statute, 503-0101. Here there's no question that that person, your client, signed the lease, that he is the person. It's not a forgery. And all we're missing is he didn't swear that he is the person who is signing it, but there's no question that he was. That's correct, and I think that that's also the fact for a commercial lease or for a lease under Delfino, that there is an important consideration in ensuring that the rules are followed and that the phrase that the Delfino Court uses is that not any scrap of paper can create this long-term lease. Okay. The district court in dismissing this complaint relied on a single case, Logan Gas, which was decided before either of the two leading cases here. Logan Gas is the case that Citizens relies on, is it not? I think it's one of several cases that are cited in Citizens. And that is an oil and gas case. It is an oil and gas lease, but if you read the opinion, it's very clear. I mean, it uses the term lease over and over and over, and there's no distinction between an oil and gas lease versus some other kind of lease. And, you know, to the extent that it's making a general pronouncement about leases, that was superseded by Delfino 28, 30 years later. I would suggest that the case that... Do you think Delfino overruled Logan Gas? I think Logan Gas is limited to the telephone. The syllabus law in Logan Gas is related. Did Delfino purport to overrule Logan Gas? Not explicitly, no. But I don't think that it needs to. I think the Logan Gas opinion, you know, it is very clear that they're talking about, you know, really at the advent of the telephone age, where somebody appeared before the notary. I think it wasn't even a notary, it was a judge, and acknowledged their signature by telephone, and they concluded that that was okay. I would suggest that to the extent that one Ohio oil and gas case controls here, it would be the 1901 decision in Langmead, which at least at minimum addressed the interaction between the statute of conveyances and oil and gas leases. According to paragraph one of that syllabus, the execution formalities for an oil and gas lease exceeding three years are the same as for other types of leases for like term and purpose. The Langmead court also noted that the term lease as used in the statute of conveyances includes the same type of interest conveyed here for a primary term of years, followed by then so much longer as oil is extracted in paying quantities. While the issues decided in Langmead involve competing claims of subsequent purchasers, the case makes clear that an oil and gas lease in the context of these execution statutes is indeed a lease, and it also clearly indicates that the recording statute, which is unique to oil and gas leases, which is now codified at 5301.09, relates to the recording and not their execution. I think it's also to point out that the law with respect to leases or really any contracts, as you look at them according to their terms, and that these particular documents which are attached to our complaint include some terms that you just cannot square with the idea of a conveyance in fee simple. It's terminable on 30 days' notice by the oil company. The oil company can surrender parts of it without notice and at their option. There are certain provisions like a dry hole, and there's a list of them in there, but they're all... Right, and I saw the list in your brief, but what struck me about it is that all the conditions involve some action that the oil company would have to choose to take, and I saw nothing there that would allow your client unilaterally to end the agreement. And so, I mean, why is that inconsistent with actually a conveyance to the oil company? I think that the first point I'd make is that that obviously illustrates the one-sided nature of this transaction. Or it might illustrate that it was a conveyance de facto, notwithstanding its label as a lease. I think it's difficult to read it that way in the sense that the actual provisions that are in there, I guess, in my understanding, would relate much more to a lease than to a conveyance of a fee. Well, I mean, let me put it this way. The agreement allows them to access and extract the oil until it's gone, as I read it. Right. Number one. Or until they choose to stop, but yes. Okay, until they abandon. Okay. Number one. And then number two, the termination provisions that you just referred to seem to, again, be entirely in their control. So why doesn't that describe a conveyance of fee determinable in the resources? Well, I think in some of the, it's certainly possible to create a conveyance in fee of the resources. That's the Indian camp case. And in some of the additional cases that they cite to, as the briefing makes clear, the Ohio Intermediate Appellate Courts are both ways on this. And one option to squaring that is to say, you look at the terms of the instrument themselves, and some of the cases in which they enforce the lease, Kramer and Swaley, the language in there is much more, I convey to you the resources under my property, as opposed to what we have here, which is for a primary term, and then for so much ever longer. And I would go back to the Langmead case, that that's pretty clear that that particular line, or that particular granting clause, when you're working with the execution statutes, that applies, you go to the lease box, you don't go to the fee box. And the final point I'd make is that the result under Delfino is not that the lease is simply void, it's that you take a step to a second tier of an equitable analysis as to what's actually happened on this property. And that would invariably favor a producer that is really drilling for oil here over somebody who's protecting a speculative interest in the price of gas, oil, or land, which, as we set forth in our reply, is consistent with... It's a punitive class, right? That's right. How in the world are you going to do that analysis class-wide? Well, that's obviously a question for another day. I think there are class allegations in this complaint because these particular group of characters from this particular oil company did this within a narrow time period to the Kohl's and tens of their neighbors. Mr. Stewart, what's your position on us certifying this issue to the Ohio Supreme Court? I know that neither party has asked for that. We can do it on our own, can't we? I believe you can, and I guess I would take no position on that. I think that I would leave that to your discretion. But I think it's clearly an issue of state law that will eventually be resolved in that system. Thank you. Good morning, Your Honors. May it please the Court, my name is Tom Fusoni. I'm here on behalf of the Enerves defendants and Seagas Properties. Mr. Marsico is here on behalf of North Coast Energy. We've agreed to split our time equally, seven and a half minutes each. Your Honor, we ask that the Court affirm the District Court's ruling entering judgment for the defendants granting their motion for judgment on the pleadings and motion to dismiss. It's undisputed. Mr. Stewart admits that in the complaint they admit to signing the lease, they admit that there's no fraud here, and that they did not file this lawsuit until this lease was in effect for six years. At that point, they filed the lawsuit in contravention of the Logan v. Keith case, which is controlling here by the Supreme Court. That specifically dealt with a defective acknowledgement as to an oil and gas lease, and held that in the absence of fraud and when there is no question that the lessors signed the lease, that the lease is valid between the parties and there are signs. And Citizens National affirmed the validity of Logan and held that that was as to conveyances of an interest in land. The conveyance, despite a defective acknowledgement, is valid between the parties and there are signs. You have to establish that this is a conveyance, though, rather than a lease, in order to get in that line of authority you're citing. Isn't that true? Your Honor, I don't agree completely with that. Whether an oil and gas lease is a lease or a conveyance, it is still valid between the parties. And I would cite to, first, Langmead, despite Mr. Stewart's representations as to Langmead. Langmead was very clear that a lease, an oil and gas lease, just like a mortgage, is still effective between the parties. It may not be effective as to a subsequent third party that comes in and operates on the property, but it is effective between and valid between the parties. And consistent with that is Revised Code 5301.09, which specifically deals with oil and gas leases and its predecessor, which Langmead addressed, is that even when an oil and gas lease, and it didn't say whether that's a conveyance of a fee, simple determinable, or a lease as in the traditional sense, it is still valid between the parties, even when it's not recorded. Well, Langmead was a 1901 case and arguably the part you're talking about was dicta. I mean, do you have anything other than Langmead that says you win, regardless of how one characterizes this agreement? Well, Logan, I would say, is a case where it did not get into, it was after Langmead, it was a 1927 decision, it did not get into whether... Now we're up to the Coolidge, or is that Hoover administration? Coolidge or Hoover, yes. All right. Moving forward, Your Honor. All right. In that case, it specifically didn't weigh into whether this is a conveyance and the fee simple determinable, or if it's a kind of traditional lease. Also, though, 5301.09 is a revised code section that was last updated and effective in 1984. So I'm moving into the Reagan administration with what I'm relying upon. And that is a consistent line of authority. That statute and the language in that goes back to a predecessor statute that was in effect in 1901. And so there is authority. There's Logan, which is the Supreme Court case, and the statutory authority that these are still lease... Oil and gas leases are still valid between the parties and their assigns. And I would submit also, Your Honors, that there has been a number of attempts recently by less sourced oil and gas leases in Ohio to try to get out of the leases by alleging a defective notary acknowledgement many years after they've signed the lease. And the state courts, the trial courts, and we've submitted these trial court decisions, have consistently held that the leases are still valid between the parties and their assigns, relying on Logan and relying upon citizens. Isn't there some kind of latches doctrine or something that would apply in your view? Ultimately, there would be other affirmative defenses, yes, Your Honor. There are other reasons why six years later to then go into court and say that we want to invalidate something that we freely sign, we openly sign, where there's no fraud, to go in there is, we think, contrary to the intent of the parties. I would note, and Judge Griffin, you asked what's the purpose of the acknowledgement statute, and Citizens addresses that directly by saying it's the proof of execution. It doesn't go to the effect of the document or conveyance between the parties. It's as the proof of execution to the world. And so it focuses, that's why there's supposed to be the acknowledgement. It's still a contract. It's still a document that should be enforceable between the parties. I want to address Delfino. And Mr. Stewart is suggesting that by implication, the Supreme Court overruled Logan with Delfino. But if you actually look at Delfino and the cases that Delfino cites to and what Delfino stands for, Delfino just follows several cases in Ohio law that go back to 1858 in the Richardson case that Delfino cites to. That's 70 years before Logan came out that there is this principle, which is that in an action at law, a lessor to a kind of commercial lease, a ground lease, cannot sue the lessee to recover rent after the lessee vacates. That's what Delfino stands for. It cites to the Weinsberg case and it cites to the Richardson case for that principle. It's where the lessor is trying to get money from the lessee after vacation, not trying to enforce the lease. And in fact, Delfino specifically says, the Supreme Court specifically says in there, we don't have to address whether this is a contract to lease because the lessor didn't try to pursue specific performance. It didn't try to pursue that avenue that it had. Instead, it tried to seek money after the lessee vacated the premises and sought either rent or damages for that. Why aren't, I mean, 5301.09 says no lease is valid except between the parties thereto, you know, if it's defectively notarized. I mean, why isn't your argument that that provision is just game, set, match? Would it be more complicated? No, Your Honor, I think it is. That's one. We have the case law of Logan, the Supreme Court, and then 5301.09. Case law sort of glossing it perhaps, blurring it? I think you can rely on either the Logan case and citizens and both or revised code 5301.09 that specifically deals with oil and gas leases. Your Honors, I am out of time. I would defer to Mr. Marsco. I think we'll address kind of some of the other issues. What is your position on the potential of certifying the issue to the Ohio Supreme Court? Your Honor, I think our position would be that it's unnecessary for, I think, three reasons, if the Court would allow me to address those briefly. I'd like to hear them. One is we do think that the Supreme Court has already ruled on a defective acknowledgement of an oil and gas lease with the Logan decision back in 1927. I think the second is that the General Assembly of Ohio has consistently, and with the 5301.09, has specifically said that oil and gas leases are valid between the parties even when they are not recorded. And the third point I would make is that the state courts in Ohio have already addressed this, and those have not. I was involved in one of them and aware of a couple others that they have not been appealed. The state courts in Ohio have consistently ruled in favor of the lessees that these leases are valid between the parties and the signs. That kind of indicates where Ohio courts have kind of set out and addressed this issue within the last two years. It's very consistently in favor of the lessees. Thank you, Your Honors. Good morning, Your Honors. Leonard Marsico for Defendant North Coast Energy. Briefly on the public policy issue, Your Honor, I don't think we need to go to public policy to decide this case, but if there is any public policy, it's that people have to live up to their contracts, not wait six years when the market changes and then try to get out of them on a technicality when they freely admit they entered into it, and thereby throw into upheaval an entire industry. Remember, this is a putative class action where there's lots of leases out there. It's also Ohio law. We're trying to figure out what Ohio law is, whether it's good public policy or not. We're supposed to enforce it, and it might be bad public policy, but if that's what it is, that's what we're going to do. And, Your Honor, we both agree that we don't need to decide this one on public policy. I did want to address the issue. There are two clear lines of authority, Delfino and Citizens National. Delfino is limited to commercial possessory leases on the surface estate, and Citizens National applies to transfer fees. Why is it logical to have such a distinction that leases that are commercial will be treated differently from other leases that are not commercial, I guess? I'm glad you asked that question because it's at the heart of this thing. Why do we have these two lines of authorities? Nobody says anything about them in there. I do want to disagree with one element of your question. A lease of mineral estate is not a lease. It is a grant of a fee, and the law of Ohio is very clear on that. We've cited that in our briefs. Even if it's a limited duration? Yes, Your Honor. And I'll tell you why. If we look at the language of this transfer, it sort of points up the point. Because you also want to say, yeah, well, maybe mineral leases are fees, but is this one? And I believe the answer to both those questions is yes. The lease states that it, quote, leases and lets exclusively unto the lessee for the purposes of drilling operations for producing and removing oil and gas and all constituents thereof, together with the right to enter into and upon the lease premises at all times for the aforesaid purpose, they get to remove the oil and gas. It's theirs. It's not borrowed. It doesn't have to be repaid. It's taken. It's a fee. Why do you call it a lease? I'm an old coal guy. I started out in coal, which does the same thing. Remember the second part of that? Together with the right to enter into and upon the lease premises at all times for the aforesaid purpose, to get to it, you get to go on the land. That's what the landowners cared about. Who's on my surface estate? So the lease language, the tail, became the wag the dog with the name. Because you get temporary possession to get to your transferred minerals that you own in fee, it's called a lease. Back to your question, Judge. Why are there these two lines of authority? I think there's three plausible explanations. One, it's a fee transfer. Well, equity wasn't going to let that be undone easily. It's a clod of dirt. It's livery of season. This is a deed transfer. You're not going to get out of it on technicality. Two. What's your definition of a fee, then? You own it. Okay, but they don't own it. They own the oil and gas. Because it's a limited duration, isn't it, here? No, as long as they keep producing, they get to keep taking. Okay. They have to keep taking. But it's not forever. Normally, what I think of a fee is that you do grant real property forever. And it's not a limited duration. Usually, a limited duration is a lease. And that's why I'm leasing a building for 20 years. I don't own that building. I have a right to come on the property for 20 years. I have a right to use that property. I can do this stuff for a limited duration. And that's the difference between a conveyance of a fee or a lease of the real estate. And here, if it's a limited duration, I would think that it's a lease, not a fee, that's all. Your Honor has accurately described the difference between a fee simple absolute and a lease. This is a fee simple determinable, which it determines. It terminates at some defined event, the exhaustion of the minerals, the failure to drill, the lapse of time. But it is a fee simple, and that's the test that I believe is used to determine whether or not Citizens National applies or Delfino. The second reason why... You're making me... You know what, Judge? I will be in bed this afternoon. Thank you. I lost a tumble with a ski slope, and it hurts. Oh, wow. Thank you for the warning. I think if you look at... I've got to give Mr. Fusoni credit for this. If you look at the history of these cases, all of the Delfino cases are defenses. Somebody sues. The landlord sues to get more rent. And the defense is, hey, you didn't execute it properly. I get to leave. It turns into a tenancy. So it's kind of like a shield. In these cases, he's trying to use it as a sword. He's trying to say, I get out. I'm not defending against you. We're not asking them for anything. They're trying to use it as a sword. So I think that that's another plausible explanation. Okay. Has that been really flushed out here? Oh, no, Your Honor. The cases do not address it. Okay, because I wasn't really aware of that distinction. I've got to think about it. But I don't think anybody's picked up on that. No, and I've been wrestling with this. Why is this a distinction? I think the bottom line, though, is that the law of Ohio, as it relates to this case, is settled. If you agree, and I encourage you to take a look at the cases if you have any doubt, that this is a fee simple determinable, which all transfers of mineral interests are in almost all cases because you get it, you take it, and you use it. Then it's controlled by Citizens National. And Logan is an oil and gas case, and Logan is after Langmead. Briefly, Your Honor, we've cited the seven cases in Ohio now that have taken up this specific issue. Edgneaux v. Stryad, Judge Sargas in the Southern District, citing the coal. Swalley v. Roosburg, the 7th District, has decided the exact question our way. Bailey v. Reserve Energy down in Belmont County. Judge Linton Lewis has a brief explanation in there about it starts out, all across the country, courts recognize that oil and gas leases are fee simple determinable estates. It's a fee transfer. It's not really a lease at all. It's a misnomer, and the treatises say that about oil and gas leases, which we also reference in our briefs as well. Another Belmont County case, Trumbull County. Your Honor, we believe that one of my mentors, heroes in life, is Judge Joseph Wise from the Third Circuit. He's a senior judge over there, and he used to say one of the things he hated most was trying to guess what state law is as a federal judge that wanted to leave it to them. I was very intrigued by your suggestion with respect to certification, because were it not, I believe, as clear as I think you'll find it, if you take a look at the briefs again, that would be an option. I don't think it's necessary here, Your Honors. You're not doing the unheard of by starting this whole new thing where we undo these leases. You're simply following Logan, Citizens National, and the longstanding law of Ohio that says an oil and gas lease is not a lease but a transfer. Thank you. Thank you. Roboto. I guess I'd like to respond to three specific points. I think the first one is the holding in Langmead is very clear with respect to the predecessor of 5301.09 that that has to do with the effect of the lease dealing with third-party purchasers, and that it makes very clear that it has nothing to do with the execution formalities of 5301.01. The second issue is... I don't follow you. You're saying 5309 provision? The 09 provision deals with whether this, my understanding is it deals with a circumstance in which the lease is executed between the parties properly, and then it's stuck in a drawer, and there's a third party who comes along, and there's a dispute, and it says that unless it's filed, then it's only enforceable between the parties. But I believe the Langmead court makes pretty clear that that doesn't have to do with the actual execution procedure. The second is I'd like to respond to this defense versus, you know, the sword versus shield argument. I'm not sure that it would matter, at least to the extent of, you know, you could take it a step further, and the lessee goes and kicks them out, and now it's a defense instead of a shield, instead of a sword, or you flip it around. Would you address this fee simple determinative? That seems to me to be kind of the answer to this. I think, and that was actually going to be my third point, I think being indicated that across the country they say that this is a fee simple determinative. I think that, you know, a review of the case law, particularly we cite the gas oil case, but I mean with respect to section 325 of the bankruptcy code where you've got to make this distinction in a different context, there's really kind of a three-way split on that issue. I think some courts will treat these as a lease, some will treat them as a fee simple determinative, as he indicated, and some will treat them as an executory contract, and I think, you know, I don't think that either party has really gone through that in their briefing, but I think it's not fair to say that this is an absolute across the country. They're fee simple determinatives as opposed to leases, et cetera. The bankruptcy cases would just seem to be a different animal altogether because those cases are determining whether these sorts of agreements fit a certain definition in the bankruptcy code for purposes of the bankruptcy code, and if they call something a lease or executory over there under those definitions, it really doesn't tell us much about what Ohio law means by the word conveyance or something. I think that that would be fair. I think it's also true that, at least in theory, that's supposed to look to the state law as to what, I mean, that particular section looks to the state law. I see I'm out of time, so unless you have any other questions. Any further questions? All right, thank you, Stuart. Thank you. The case is submitted. It's my understanding the remaining cases will be submitted on briefs. With that, you may adjourn.